```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

BENJAMIN ANCONA, SR.,           :
                                :
     Plaintiff,                 :
                                :
v.                              :   Case No. 3:13-cv-1156 (RNC)
                                :
MICHAEL K. HICKS,               :
                                :
     Defendant.                 :
```

RULING AND ORDER

Plaintiff Benjamin Ancona Sr. brings this action under 42 U.S.C. § 1983 against Michael Hicks, a detective in the Coventry Police Department, in his individual capacity. Mr. Ancona claims that his Fourth Amendment rights were violated when Detective Hicks caused him to be arrested and prosecuted on a charge that he conspired with a convicted felony sex offender, Todd Nagy, to enable Nagy to violate his sex offender registration obligations. Detective Hicks has moved for summary judgment. For reasons explained below, I conclude that Detective Hicks is entitled to qualified immunity as a matter of law and therefore grant the motion for summary judgment.

I.   Background

The following facts are undisputed unless otherwise noted. In January 2012, Detective Hicks was investigating Todd Nagy on allegations that Nagy was not in compliance with his registration obligations as a convicted felony sex offender. As part of the investigation, Detective Hicks learned from the Connecticut Sex

1

Offender Registry Unit that Nagy had listed his address as 411 Flanders River Road, Coventry, Connecticut.

On January 17, 2012, Detective Hicks went to the Flanders Road address. Nagy was not there, but Hicks spoke with the plaintiff, Mr. Ancona, the owner of the property. During their conversation, Mr. Ancona indicated that he knew of Nagy. Mr. Ancona and his wife gave Detective Hicks an address for Nagy in Maine. Later that month, after further investigation, Detective Hicks arrested Mr. Nagy pursuant to a warrant for failure to register as a felony sex offender.

The parties dispute what happened while Mr. Nagy was in custody following his arrest. Both sides have submitted a document entitled "Offender Statement," dated January 26, 2012. Def.'s Mot. Summ. J., Ex. G (ECF No. 73-9); Pl.'s Opp'n Summ. J., Ex. 12 (ECF No. 77-14). This document purports to memorialize a statement Mr. Nagy gave Detective Hicks while at the police department. According to this statement, Nagy told Hicks that he lived with Mr. Ancona for a period of time at the Flanders Road address and that when he decided to go to Maine, Mr. Ancona agreed to forward sex offender registration forms as they arrived in the mail. Detective Hicks contends that he prepared the "Offender Statement" by typing information Nagy gave him verbally. According to Hicks, Nagy reviewed the written version of his statement, swore to its accuracy, and signed the form.

Plaintiff denies that Hicks faithfully recorded Nagy's statement. He alleges that Hicks drafted the statement himself, knowingly fabricated the facts, and threatened Nagy in order to get him to put his signature on the form.

On February 2, 2012, Detective Hicks prepared an application for an arrest warrant charging Mr. Ancona with conspiracy to commit failure to register as a felony sex offender, in violation of Conn. Gen. Stat. §§ 53a-48 and 54-254. Detective Hicks's affidavit in support of the warrant application contained information in the "Offender Statement." The warrant application was approved and an arrest warrant was issued. On March 16, 2012, Mr. Ancona was arrested pursuant to the warrant. The charge of conspiracy to commit failure to register as a felony sex offender remained pending until April 26, 2013, when it was dismissed.

II. Discussion

Mr. Ancona asserts claims of false arrest and malicious prosecution.[1] Detective Hicks argues that he is entitled to summary judgment on various grounds, including qualified immunity. I agree that he is entitled to qualified immunity as to both claims.

A. Legal Standards

---

[1] The complaint includes other allegations, but Mr. Ancona is pursuing only the claims of false arrest and malicious prosecution. See Pl.'s Mem. Opp'n Summ. J. (ECF No 77-1) at 1.

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether this standard is met, the evidence must be viewed in the light most favorable to the non-moving party. Id. at 255.  However, evidence that is "merely colorable" may not be sufficient to defeat summary judgment. Id.

Mr. Ancona's claims for false arrest and malicious prosecution both depend on showing that Detective Hicks lacked probable cause. See Grimm v. Krupinsky, No. 04-2913-CV, 2005 WL 1586978, at *1 (2d Cir. July 7, 2005); Sharnick v. D'Archangelo, 935 F. Supp. 2d 436, 444 (D. Conn. 2013) ("[I]f probable cause existed for the arrest, the plaintiffs cannot satisfy the elements of either a false arrest claim or a malicious prosecution claim under § 1983.").  The existence of probable cause is a complete defense to Mr. Ancona's claims. Id.; see also Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).

Probable cause to arrest exists when, at the time of the arrest, reasonably trustworthy facts and circumstances known to the authorities are sufficient to warrant a person of reasonable

caution in the belief that an offense has been committed by the person to be arrested. Brinegar v. United States, 338 U.S. 160, 175-76 (1949). "[P]robable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). It requires more than bare suspicion but need not be based on evidence sufficient to support a conviction. Brinegar, 338 U.S. at 175. The probable cause requirement is satisfied if, given all the available information, there is a "fair probability" that the person to be arrested has committed an offense. Gates, 462 U.S. at 238.

Qualified immunity shields a law enforcement officer from a suit for damages under 42 U.S.C. § 1983 if it was objectively reasonable for the officer to believe his actions were lawful at the time. See Simpson v. City of New York, 793 F.3d 259, 268 (2d Cir. 2015); Zalaski v. City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013). In the context of an arrest, an officer is entitled to qualified immunity if he can show the arrest was supported by "arguable probable cause," which exists if either (a) "it was objectively reasonable for the officer to believe that probable cause existed," or (b) "officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). While the arguable

probable cause standard is "more favorable" to officers than the probable cause standard, it is not "toothless": qualified immunity will not apply if reasonable officers "would have to agree" that the information does not "add up" to probable cause - even if it "came close." Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012).

Normally, the issuance of a warrant by a neutral magistrate creates a presumption that it was objectively reasonable for the officer to believe probable cause existed. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). However, this presumption can be overcome if the officer who applied for the warrant knowingly or recklessly included false statements or omitted material information in the affidavit, and the false or omitted information was necessary to the finding of probable cause. Walczyk v. Rio, 496 F.3d 139, 155-56 (2d Cir. 2007); McColley v. Cty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014). A plaintiff who seeks to challenge probable cause in this way faces a "heavy burden." Golino, 950 F.2d 871.

To determine whether false or omitted information was necessary to establish probable cause for the issuance of a warrant, courts consider whether probable cause still exists when the challenged affidavit is "corrected." See Pines v. Bailey, 563 F. App'x 814, 817 (2d Cir. 2014). Errors are not material if, after correcting any misstatements and including any omitted

information, the corrected affidavit would have been "sufficient to support arguable probable cause." Escalera, 361 F.3d at 743-44. When the corrected affidavit provides "an objective basis to support arguable probable cause," any remaining factual disputes are not material to the qualified immunity determination, and the defendant is entitled to summary judgment. Id.

B.   Analysis

Mr. Ancona argues that his claims are not barred by qualified immunity because Detective Hicks made intentional false statements in the application for the arrest warrant and omitted information that would have negated a finding of probable cause. Under the correct affidavit doctrine, the question is whether the evidence in the summary judgment record, viewed most favorably to Mr. Ancona, compels a finding that a proper warrant application would have been sufficient to establish at least arguable probable cause. I conclude that the answer is yes.

Mr. Ancona claims that the "Offender Statement" signed by Todd Nagy was fabricated by Detective Hicks. He points to an affidavit by Mr. Nagy and certain statements from Nagy's deposition. In the affidavit, Mr. Nagy states that Detective Hicks drafted the "offender Statement," and "demanded" that he sign it, stating he would be "treated more favorably" if he "signed the statement as written." Nagy Aff., Pl.'s Opp'n Summ. J., Ex. 11 (ECF No. 77-13) ¶ 4. The affidavit states that

"[m]ost of the statement is false and contains assertions which were solely created and suggested by Detective Hicks." Id. ¶ 5. The affidavit states that Nagy "felt coerced" when he signed the statement. Id. ¶ 11.[2]

In his deposition, Mr. Nagy testified that at the time he gave the statement to Detective Hicks, Hicks "was sort of on the lines of threatening me." Nagy Dep., Pl.'s Opp'n Summ. J., Ex. 5 (ECF No. 77-7) at 2:10-11. When asked whether, at the time he gave the statement, he "would agree" he was "under considerable duress?", Nagy responded, "Yes." Id. at 10:22-11:1. Importantly, however, when asked "So everything that is in this statement is what you told Detective Hicks?", Nagy responded, "Yes." Id. at 2:13-15. In addition, in response to a series of questions, Mr. Nagy testified that approximately three sex offender registration forms had been forwarded to him by Mr. Ancona, and he assumed Mr. Ancona knew the forms related to the sex offender registry due to markings on the envelopes. Id. at 7:7-8:25.

This evidence, viewed most favorably to Mr. Ancona, does not permit a reasonable finding that the "Offender Statement" is a

---

[2] Detective Hicks urges the Court to disregard Nagy's affidavit pursuant to the "sham affidavit" doctrine, as it directly contradicts Nagy's assertions in the "Offender Statement" he read and signed. Because plaintiff claims that the "Offender Statement" was fabricated by Hicks and that Nagy's signature was coerced, it is necessary to consider the Nagy affidavit in determining whether Detecitve Hicks is entitled to summary judgment based on qualified immunity.

8

total fabrication.  While Mr. Nagy did swear in his affidavit that the statement includes assertions created by Detective Hicks, he also testified that "everything" in the statement reflects what he told Hicks, and he further testified that Mr. Ancona did forward multiple sex offender registry forms to him in Maine.

Even assuming that every statement in the "Offender Statement," apart from the facts Mr. Nagy confirmed at his deposition, reasonably can be viewed as a misrepresentation by Detective Hicks, the misrepresentations are not material under the corrected affidavit doctrine.  Correcting the warrant affidavit to eliminate any such misrepresentations, a proper affidavit would still include the following facts and circumstances:

- Mr. Nagy had given the Connecticut Sex Offender Registry Unit the address of the Ancona residence on Flanders Road;
- Mr. Ancona knew of Mr. Nagy and had his address in Maine;
- Mr. Ancona had forwarded multiple registry forms to Mr. Nagy in Maine; and
- Markings on the envelopes showed they related to the sex offender registry.

These facts and circumstances support at least arguable probable cause for the arrest of Mr. Ancona.

Plaintiff contends that Detective Hicks omitted the following information from the warrant application: Mr. Nagy had

a prior conviction for giving a false statement; Nagy's father had forwarded at least some registration forms to him; and Mr. Ancona denied knowing that the letters he forwarded related to the sex offender registry.  Adding these omissions to the corrected affidavit, the affidavit still supports at least arguable probable cause for Mr. Ancona's arrest as a matter of law.  That Mr. Nagy, a convicted felony sex offender, had a prior conviction for making a false statement, would not undercut a reasonable belief that he had received help in avoiding his registration obligations.  That Mr. Nagy's father had knowingly forwarded registration forms at some point would not undercut a reasonable belief that Mr. Ancona had done so as well.  And Mr. Ancona's statement to law enforcement that he did not know what he was forwarding to Mr. Nagy would not preclude a finding of probable cause for his arrest.

    In evaluating the corrected affidavit, a reasonable officer might well conclude that it established probable cause to arrest Mr. Ancona for helping Mr. Nagy avoid his registration obligations.  Even if a reasonable officer could disagree, Detective Hicks is entitled to qualified immunity because, at a minimum, the corrected affidavit establishes arguable probable cause for Mr. Ancona's arrest.

III. Conclusion

    Accordingly, the defendant's motion for summary judgment

10

[ECF No. 73] is hereby granted.  The Clerk may enter judgment in favor of the defendant dismissing the action.

So ordered this 31st day of March 2017.

>            _____/s/ RNC_____
>                  Robert N. Chatigny
>              United States District Judge